# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

# NORTHERN DIVISION

| | |
|---|---|
| **XAT.COM LIMITED,**<br><br>　　　　**Plaintiff,**<br><br>v.<br><br>**HOSTING SERVICES, INC. aka 100TB.COM,**<br><br>　　　　**Defendant.** | **MEMORANDUM DECISION AND ORDER**<br><br>**Case No. 1:16-cv-00092-PMW**<br><br>**Chief Magistrate Judge Paul M. Warner** |

All parties in this case have consented to Chief Magistrate Judge Paul M. Warner conducting all proceedings, including entry of final judgment, with appeal to the United States Court of Appeals for the Tenth Circuit.[1] *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73. Before the court is Defendant Hosting Services, Inc. aka 100TB.com's ("100TB") motion for summary judgment.[2] 100TB seeks either full or partial summary judgment on Plaintiff Xat.com Limited's ("Xat") remaining claims for breach of contract and equitable indemnification.

On January 9, 2018, the court held oral argument on the motion.[3] At the hearing, Xat was represented by Romaine C. Marshall. 100TB was represented by Paul G. Karlsgodt and Patricia W. Christensen. After hearing the arguments of counsel, the court took the motion under

---

[1] *See* docket no. 11.

[2] *See* docket no. 41.

[3] *See* docket no. 50.

advisement. Now being fully advised, the court renders the instant Memorandum Decision and Order.

## BACKGROUND

This action is based upon a contract between Xat and 100TB, the Master Services Agreement ("MSA"), which the parties executed on October 13, 2008. Xat is a social networking website that allows users to exchange instant messages. 100TB provides web server hosting services. In 2008, Xat utilized 100TB to host Xat's servers. While Xat's complaint is vague about what 100TB's hosting services entail, it appears that 100TB's hosting services involve 100TB ensuring the physical security and stability of Xat's servers as well as protecting Xat's servers from digital invasion from unauthorized third parties.

In 2015, Xat alleges that 100TB allowed an unauthorized third party to access Xat's servers. Xat claims that over a ten-month period, Xat repeatedly warned 100TB that an unauthorized third party was attempting to gain access to Xat's servers through "social engineering." Xat asserts that in response to those repeated warnings, 100TB assured Xat that access to its servers would be denied and suggested that Xat take certain steps to further secure its servers. Xat contends that while it complied with 100TB's instructions, 100TB nevertheless granted a third party unauthorized access to Xat's servers.

Specifically, Xat alleges that on November 4, 2015, an unknown third party was granted access to Xat's servers. The third party allegedly damaged and disabled Xat's servers and stole Xat's proprietary software, including Xat's main database. Xat contends that, subsequently, it requested that 100TB secure and power down Xat's servers until it could contain the intrusion.

Xat alleges that 100TB did not power down at least three of Xat's servers, did not turn on 100TB's two-factor authentication, and failed to back up the data on Xat's servers.

On November 8, 2015, Xat contends that 100TB again granted a third party access to Xat's servers. Xat alleges that, during this second incident, the third party accessed Xat's proprietary log files, databases, source code, and software, and erased system log files from Xat's server.

## RELEVANT UNDISPUTED FACTS

The following undisputed facts apply to the court's analysis of Xat's breach of contract claim. Paragraph 11 of the MSA ("Paragraph 11") provides certain limitations on recoverable damages in the event of a breach ("Damages Limitations"):

> NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THIS MSA, IN NO EVENT WILL [100TB] BE LIABLE TO [Xat] OR ANY THIRD PARTY MAKING A CLAIM BASED ON OUR PROVIDING THE SERVICES TO [Xat] FOR (I) LOST PROFITS; (II) LOSS OF BUSINESS; (III) LOSS OF REVENUES; (IV) LOSS OF DATA OR INTERRUPTION OR CORRUPTION OF DATA; (V) ANY CONSEQUENTIAL OR INDIRECT DAMAGES; OR (VI) ANY INCIDENTAL, SPECIAL, RELIANCE, EXEMPLARY OR PUNITIVE DAMAGES (IF APPLICABLE) . . . .[4]

Paragraph 11 also provides a cap on recoverable damages ("Damages Cap") by providing that 100TB's "MAXIMUM LIABILITY SHALL BE ONE (1) MONTH'S FEES (OR THE EQUIVALENT THEREOF) ACTUALLY RECEIVED BY [100TB] DURING THE MONTH PRIOR TO [Xat's] CLAIM."[5] Paragraph 11 further provides that if it "IS PROHIBITED BY

---

[4] Docket no. 45-3 at ¶ 11.

[5] *Id*.

THE LAW GOVERNING THIS MSA, [100TB's] LIABILITY SHALL BE LIMITED TO THE EXTENT ALLOWED BY LAW."[6]

Paragraph 17 of the MSA contains a severability clause ("Severability Clause"), which in relevant part provides:

> Should a particular provision be held to be illegal or unenforceable in any jurisdiction, that provision shall be effective to the extent of such illegality or unenforceability, without invalidating the remaining provisions, and the provision at issue shall be restated to reflect the original intentions of the parties, to the greatest extent possible, and in accordance with the law. . . .[7]

Turning to the undisputed facts relevant to Xat's equitable indemnification claim, Paragraph 9 of the MSA ("Paragraph 9.a") provides, in relevant part:

> [100TB agrees] to indemnify, defend and hold [Xat], [Xat's] employees, directors and officers . . . from any and all third party actions, liability, damages, costs and expenses (including, but not limited to, those attorneys' fees and expenses charged to [100TB]) arising from, or relating to, personal injury or property damage resulting solely from our gross negligence or willful misconduct . . . .[8]

The parties do not dispute that Xat has not been named as a defendant in a lawsuit or incurred costs defending any lawsuits against Xat as a result of the alleged unauthorized third-party access to Xat's servers.[9] At the same time, the parties do not dispute that, as a result of the alleged unauthorized third-party access to Xat's servers, Xat has been required by

---

[6] *Id*.

[7] *Id*. at ¶ 17.g.

[8] *Id*. ¶ 9.a.

[9] *See* docket no. 41 at 9; docket no. 44 at 12.

4

regulatory and policy authorities to produce certain information and incurred expenses in cooperating with the police and regulatory authorities.[10] The parties also do not dispute that Xat's claimed damages include costs associated with reporting the alleged unauthorized third-party access to the appropriate authorities.[11]

Finally, the MSA provides a choice-of-law provision providing that the "MSA will be construed and controlled by the laws of the State of Utah."[12]

## RELEVANT PROCEDURAL BACKGROUND

On June 28, 2016, Xat filed the instant lawsuit asserting claims against 100TB for gross negligence, breach of the MSA, unjust enrichment, and equitable indemnification.[13] In response to Xat's complaint, 100TB filed a motion to dismiss pursuant to Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure.[14] The same day it filed its motion to dismiss, 100TB filed a notice of offer of judgment for $2715.95, which constitutes one month worth of fees paid by Xat to 100TB during the month prior to Plaintiff's complaint, consistent with Paragraph 11.[15]

---

[10] *See* docket no. 41 at 9-10; docket no. 44 at 12.

[11] *See* docket no. 41 at 10; docket no. 44 at 12.

[12] Docket no. 45-3 at ¶ 17.c.

[13] *See* docket no. 2.

[14] *See* docket no. 15.

[15] *See* docket no. 13.

100TB also filed a motion to deposit that amount in the court registry,[16] which the court granted.[17]

On February 2, 2017, the court issued a Memorandum Decision and Order ("Order") granting in part and denying in part 100TB's motion to dismiss.[18] The court granted the motion with respect to Xat's gross negligence and unjust enrichment claims, but denied it with respect to Xat's claims for breach of contract and equitable indemnification.[19] While the court dismissed Xat's gross negligence tort claim, the court also made clear that "nothing in [the Order] would prevent Xat from seeking recovery for 100TB's alleged gross negligence in contract."[20]

In addressing Xat's breach of contract claim, the court concluded in the Order, with respect to Paragraph 11, that "[a]t best, it is ambiguous."[21] The court further determined that Paragraph 11 "limits 100TB's liability to a ridiculously nominal sum" and that "[c]onceivably, limiting 100TB's liability to a trivial sum is just window dressing for eliminating liability altogether."[22] Finally, the court concluded that "Paragraph 11 could be interpreted as a limitation of liability provision that allows 100TB to engage in grossly negligent or willful conduct while

---

[16] *See* docket no. 14.

[17] *See* docket no. 19.

[18] *See* docket no. 30.

[19] *See id*.

[20] *Id*. at 14.

[21] *Id*. at 16.

[22] *Id*.

leaving Xat with nominal retribution" and noted that "[s]uch liability waivers are generally unenforceable."[23]

In considering Xat's equitable contribution claim, the court concluded that Paragraph 9.a "is broadly written to encompass indemnification for 'any and all third party actions.'"[24] The court also determined that "[t]here is nothing in the MSA that excludes government investigations from the [Paragraph 9.a]'s definition of a third party action."[25]

On August 23, 2017, 100TB filed the motion for summary judgment now before the court.[26]

## SUMMARY JUDGMENT STANDARD

Rule 56(a) of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In evaluating a motion for summary judgment, the court reviews the facts in a light most favorable to the nonmovant and draws all reasonable inferences in the nonmovant's favor. *See Jones v. Norton*, 809 F.3d 564, 573 (10th Cir. 2015).

---

[23] *Id* at 16-17.

[24] *Id*. at 19.

[25] *Id*.

[26] *See* docket no. 41.

7

## ANALYSIS

100TB argues that it is entitled to summary judgment on the entirety of Xat's breach of contract claim because, according to 100TB, the Damages Cap is enforceable and 100TB has already paid the amount dictated by Paragraph 11 into the court registry. Alternatively, 100TB contends that it is entitled to partial summary judgment declaring that the Damages Limitations are valid and enforceable. 100TB also argues that it is entitled to summary judgment on Xat's claim for equitable indemnification. The court will address those arguments in turn.

## I. Breach of Contract

### A. Damages Cap

In its motion to dismiss, 100TB argued that the Damages Cap was enforceable. In the Order, the court rejected that argument. 100TB correctly notes that the court's rejection of its argument on the Damages Cap was made in the context of a motion to dismiss, not a motion for summary judgment. 100TB contends that the undisputed facts developed in discovery make clear that the Damages Cap is enforceable. Accordingly, 100TB argues that it is entitled to summary judgment on the entirety of Xat's breach of contract claim. The court disagrees.

As noted above, the court concluded in the Order that Paragraph 11 was ambiguous and may be unenforceable.[27] Specifically, the court concluded that Paragraph 11 "limits 100TB's liability to a ridiculously nominal sum" and that "[c]onceivably, limiting 100TB's liability to a trivial sum is just window dressing for eliminating liability altogether."[28] The court also concluded that "Paragraph 11 could be interpreted as a limitation of liability provision that

---

[27] *See* docket no. 30 at 16-17.

[28] *Id.* at 16.

allows 100TB to engage in grossly negligent or willful conduct while leaving Xat with nominal retribution" and noted that "[s]uch liability waivers are generally unenforceable."[29]

100TB has not pointed to any facts developed in discovery that would alter those conclusions. For the same reasons set forth in the preceding paragraph, the court again concludes that the Damages Cap is ambiguous and may be unenforceable. Specifically, the Damages Cap could be interpreted as a limitation of liability for 100TB's gross negligence or willful misconduct that leaves Xat with nominal recovery. As noted in the Order, liability waivers of that kind are generally unenforceable. *See, e.g.*, *Penunuri v. Sundance Partners, Ltd.*, 257 P.3d 1049, 1051 (holding contractual provisions which limit liability for harm willfully inflicted or caused by gross negligence are invalid as against public policy), *aff'd*, 301 P.3d 984; *Caplin Enters., Inc. v. Arrington*, 145 So. 3d 608, 616-17 (Miss. 2014) (finding the contract provision unconscionable where the defendant's "contractually-limited liability is so nominal that it has the practical effect of avoiding almost all responsibility for a breach" (quotations omitted)). Because the Damages Cap is ambiguous, the court concludes that 100TB is not entitled to summary judgment on the entirety of Xat's breach of contract claim. *See SCO Grp., Inc. v. Novell, Inc.*, 578 F.3d 1201, 1215 (10th Cir. 2009) ("[W]hen conflicting evidence is presented such that the ambiguities in a contract could legitimately be resolved in favor of either party, it is for the ultimate finder of fact—not the court on summary judgment—to interpret the contract."); *Zollman v. Myers*, 797 F. Supp. 923, 925 (D. Utah 1992) ("[S]ummary judgment is normally inappropriate when a contract term is ambiguous because a triable issue of fact usually exists as to its interpretation." (quotations and citations omitted)).

---

[29] *Id*. at 16-17.

### B. Paragraph 11

The Damages Limitations provide that Xat may not recover for lost profits; loss of business; loss of revenues; loss of data or interruption or corruption of data; consequential or indirect damages; or any incidental, special, reliance, exemplary, or punitive damages. 100TB argues that, pursuant to the Severability Clause, the Damages Limitations can be enforced even if the Damages Cap is unenforceable. 100TB further argues that if the court determines that the Damages Limitations are not unconscionable, they should be enforced. Finally, 100TB contends that if the Damages Limitations are enforceable, they preclude nearly every category of damages claimed by Xat, with the exception of actual or direct damages. According to 100TB, those actual or direct damages would be measured by the value of 100TB's hosting services, if any, of which Xat was deprived as a result of the alleged breach of the MSA.

Again, the court notes its conclusion in the Order that Paragraph 11 is ambiguous and its reiteration of that conclusion above. In the Order, the court made no distinction between the Damages Cap and the Damages Limitations in concluding that Paragraph 11 is ambiguous. To the contrary, the court concluded that Paragraph 11, as a whole, was ambiguous because it could be interpreted as a provision that limits liability for 100TB's gross negligence and willful misconduct. As noted by Xat, the prohibition on such liability waivers does not distinguish between exculpatory provisions that limit the types of recoverable contract damages (like the Damages Limitations) and those that place a limit on the amount of recoverable damages (like the Damages Cap). Because Paragraph 11, as a whole, is ambiguous, 100TB's arguments must fail.

Furthermore, even if the court were to agree with 100TB's severance argument, the court would conclude that the Damages Limitations are ambiguous. In the court's view, the Damages Limitations could be interpreted in a similar fashion as the Damages Cap. Specifically, the Damages Limitations could be interpreted as a provision that limits liability for 100TB's gross negligence and willful misconduct and leaves Xat with nominal recovery. Again, such a limitation on liability is generally unenforceable. *See, e.g.*, *Penunuri*, 257 P.3d at 1051; *Caplin Enters., Inc.*, 145 So. 3d at 616-17. Because the court concludes that the Damages Limitations are ambiguous, the court need not address 100TB's conscionability arguments on the Damages Limitations. For the same reason, the court concludes that 100TB is not entitled to partial summary judgment declaring that the Damages Limitations are valid and enforceable. *See SCO Grp., Inc.*, 578 F.3d at 1215; *Zollman*, 797 F. Supp. at 925.

## II.     Equitable Indemnification

In its motion to dismiss, 100TB argued that it was entitled to dismissal of Xat's claim for equitable indemnification. The court rejected that argument in the Order. Although 100TB's argument was made on grounds of ripeness, 100TB has essentially reiterated the same arguments in the instant motion for summary judgment. Indeed, 100TB has relied upon the same cases in the instant motion that it relied upon in its motion to dismiss. 100TB's specific argument is that equitable indemnification requires that Xat must have discharged a legal obligation owed to a third party and that 100TB be liable to that third party. 100TB contends that the undisputed facts demonstrate that Xat has not been adjudged liable in any third-party action relating to the alleged unauthorized third-party access to Xat's servers. Accordingly, 100TB maintains that it is entitled to summary judgment on Xat's equitable indemnification claim.

As noted above, the court concluded in the Order that Paragraph 9.a "is broadly written to encompass indemnification for 'any and all third party actions.'"[30] The court also concluded that "[t]here is nothing in the MSA that excludes government investigations from the [Paragraph 9.a]'s definition of a third party action."[31]

The court rejected 100TB's arguments concerning equitable indemnification in the Order. 100TB has made the same substantive arguments in the instant motion for summary judgment and, accordingly, the court rejects them again here. 100TB has not pointed to any facts developed during discovery that would cause the court to revisit the above-referenced conclusions. Importantly, 100TB has conceded that, as a result of the alleged unauthorized third-party access to Xat's serves, Xat has been required by regulatory and policy authorities to produce certain information and incurred expenses in cooperating with the police and regulatory authorities. Pursuant to the court's conclusions in the Order, those expenses may be the basis for a claim for damages under a theory of equitable indemnification pursuant to Paragraph 9.a. For those reasons, the court concludes that 100TB is not entitled to summary judgment on Xat's equitable indemnification claim.

---

[30] *Id*. at 19.

[31] *Id*.

## **CONCLUSION AND ORDER**

Based upon the foregoing, IT IS HEREBY ORDERED that 100TB's motion for summary judgment[32] is DENIED.

IT IS SO ORDERED.

DATED this 27th day of March, 2018.

BY THE COURT:

PAUL M. WARNER
Chief United States Magistrate Judge

---

[32] *See* docket no. 41.