# EXHIBIT K



201 S. Main Street, Suite 1100
Salt Lake City, UT  84111
T. 801.328.3131
F. 801.578.6999
www.stoel.com

JORDAN C. BLEDSOE
D. 801.578.6932
jordan.bledsoe@stoel.com

January 25, 2019

**VIA EMAIL**

David M. McMillan
**Baker & Hostetler LLP**
45 Rockefeller Plaza
New York, NY  10111
Email:  dmcmillan@bakerlaw.com

>    Re:    *Xat.com Limited v. Hosting Services, Inc. a/k/a 100TB.com* **(Case No. 16-cv-00092) (D. Utah):  Response to January 18, 2019 Letter**

Dear David:

I write in response to your January 18, 2019 letter regarding our January 17, 2019 meet-and-confer call.  I will address your concerns in the order in which you raised them in your letter.

### A.    Interrogatory No. 17

As I stated on our call, Xat potentially has the usernames and email addresses for many of its volunteers.  Xat does not store or compile the usernames, email addresses, or any other information regarding its volunteers.  However, Xat could potentially find this information by searching the information in its possession.

The reason why Xat is unwilling to supplement its response to Interrogatory No. 17 is because you failed to articulate during the call how an identification of the names and email addresses of Xat's volunteers is relevant to the case.  Indeed, Xat is not claiming damages as a result of the loss of its volunteers or purporting to rely on information from any of its volunteers to support its claims.  Unless and until 100TB puts forth a compelling reason why the usernames and email addresses of Xat's volunteers *during a five-year span* are in any way relevant to the claims in the case, Xat will not undertake the obligation of searching its records and providing that information.

As explained during the call, Xat may be willing to agree to provide the names and email addresses of its volunteers during a narrower timeframe.  However, you rejected that approach during our call.  Nonetheless, we are willing to consider a narrowed request.

David M. McMillan
January 25, 2019
Page 2

### B. Interrogatory No. 18

Interrogatory No. 18 requests that Xat identify all attempts to gain unauthorized access to Chris Hart's personal information, credit card information, or email accounts between January 1, 2010 and December 31, 2015. Xat supplemented its initial response to Interrogatory No. 18 on January 11, 2019 and stated that Mr. Hart was unaware of any attempts to gain unauthorized access to his credit card information, email accounts, or confidential information. Xat's supplemental response to Interrogatory No. 18 fulfilled Xat's discovery obligations as to that interrogatory.

The Federal Rules of Civil Procedure do not require Xat to provide "the steps Xat or Chris Hart took to discern the requested information." Indeed, I have read the case you cited in your letter regarding this issue, *Miller v. Union Cent. Life Ins. Co.*, No. 2:14-cv-00575-JNP-PMW, 2016 WL 2766636, *1-2 (D. Utah May 12, 2016), and it is unclear how that case applies to Xat's response to Interrogatory No. 18. In that case, the party from which discovery was sought asserted claims on behalf of approximately 430 individuals. When that party was asked about the basis for the claims of those 430 individuals, the party feigned any knowledge of the basis of those claims.

Unlike in *Miller*, neither Xat nor Mr. Hart have feigned personal knowledge regarding the information requested in Interrogatory No. 18. Rather, Mr. Hart testified on behalf of Xat that neither he nor Xat is aware of any successful or unsuccessful attempts by unauthorized individuals to gain access to his credit card information, email accounts, or confidential personal information. That response fully satisfied Xat's obligations under the Federal Rules of Civil Procedure.

Moreover, I represented to you during our call that Mr. Hart reviewed documents in his possession in preparing Xat's response to Interrogatory No. 18. In response, you asserted that Xat was required to disclose each and every step Mr. Hart took to review information in response to Interrogatory No. 18. We are not aware of any authority supporting that position but are willing to review any legal authority you provide for your position.

### C. Request for Production No. 15

Request for Production No. 15 seeks all documents concerning any Xat user associated with the name or username PkZuhnny, Zhunny, zuhnny1, XatZuhnny, Moofie Bunch, BumpHead, Jack Kelly or other similar name. As I stated on our call, this request is facially overbroad and unduly burdensome in that it is not limited in temporal or substantive scope. I informed you during our call that I had not yet reviewed the documents provided to us by Xat relating to this request but said that the documents potentially included communications regarding the Xat user's complaint about the Xat.com website.

David M. McMillan
January 25, 2019
Page 3

Xat agreed that, in response to this request, it would provide communications between the Xat user identified above and Xat for 2015. Xat agreed that in its response to Request for Production No. 15, it would state what portion of the response to which it was producing documents. To be clear, Xat did not agree to identify each of the categories of documents it was withholding. Xat will endeavor to produce documents as set forth above by January 31, 2019.

### D.  Request for Production No. 16

Request for Production No. 16 seeks all documents concerning *any* complaints made by *any* Xat user about the Xat.com website between January 1, 2010 and December 31, 2015. You asserted that every complaint by any user on Xat's website during a five-year period is relevant to Xat's damages because the complaints may show why the user base changed during this time. It is unclear, however, why it would make a difference to Xat's damages if users stopped using Xat from, for example, 2010 to 2014 because they were unhappy with how the website was operated as opposed to simply becoming disinterested in further use of the site.

You claim that I was "unable," despite your previous requests, "to provide any detail as to the nature and volume of these documents." But this request is *facially* overbroad and unduly burdensome. Indeed, as I told you, providing details regarding the nature and volume of those documents would require Xat to gather every bit of information from Xat.com's website for a five-year period. This would involve an enormous amount of data considering thousands of users are active on the website each day. It would then require Xat to figure out a way to search specifically for complaints by its users about the website.

Ultimately, Request for Production No. 16 is nothing more than a fishing expedition and an attempt to create undue burden on Xat. This is confirmed by the fact that when I suggested you narrow Request for Production No. 16 in time and substance, you refused. As such, Xat will not respond to 100TB's overbroad and unduly burdensome request.

### E.  Request for Production No. 17

Request for Production No. 17 seeks all communications between and/or among Xat volunteers between January 1, 2010 and December 31, 2015. I represented to you that I am aware of a forum that exists where volunteers can post information that is then viewed by Xat. However, I did not state that Xat has access to communications directly between Xat volunteers.

I invited you to narrow the scope of Request for Production No. 17 because, as written, the request seeks every communication regardless of the substance of the communication. Surely not every communication during a five-year span between volunteers is relevant. Despite that, you refused to narrow the request. We invite you to propose a request that is narrowed in temporal and substantive scope.

David M. McMillan
January 25, 2019
Page 4

### F.     Request for Production No. 18

100TB's Request for Production No. 18 seeks "[a]ll communications exchanged between and/or among Xat personnel between January 1, 2010 and December 31, 2015, discussing any attempts, whether successful or unsuccessful, by any person to gain unauthorized access to Xat's data, the data of Xat's end users, and/or Xat's IT systems."  I suggested that 100TB limit the scope of its request to the year in the which the cyberattacks occurred.  You refused.

You assert that because Xat's damages expert has relied on information from 2007 to 2018 relating to Xat's user base, that somehow entitles 100TB to any information during this time period.  Yet, you have not provided a reasonable explanation for how this information would be used to refute Xat's damages.  We welcome you to provide such an explanation.  Unless and until you do, we will not agree to expand the scope of Xat's response to this request.

Next, your letter infers that Xat misrepresented that it does not have documents responsive to Request for Production No. 18.  Not so.  I told you that I don't know if Xat has documents responsive to this request but that we were in the process of gathering emails from Mr. Hart and Mr. Ferris and intend to perform keyword searches of those emails.  As agreed, we will produce documents from January 1, 2015 to December 31, 2015 responsive to this request.

### G.     Request for Production No. 19

We will endeavor to provide you with an update regarding Xat's tax returns by January 31, 2019.

### H.     Request for Production No. 20

Request for Production No. 20 seeks all documents concerning Xat's utilization of Munin.  Xat will produce any documents in its possession showing Xat's employing of Munin.  Specifically, Xat will produce documents in its possession relating to when it began employing Munin and what type of information Munin collects.  Additionally, Xat will produce documents showing Munin's detection of malicious attacks against Xat's networks.  Xat will endeavor to produce documents responsive to Request for Production No. 20 by January 31, 2019.

Please let me know should you have any questions about the foregoing.

Best Regards,

Jordan C. Bledsoe