# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

## NORTHERN DIVISION

| | |
|---|---|
| **XAT.COM LIMITED,** | **MEMORANDUM DECISION AND ORDER** |
| **Plaintiff,** | |
| v. | |
| **HOSTING SERVICES, INC. aka 100TB.COM,** | **Case No. 1:16-cv-00092-PMW** |
| **Defendant.** | **Chief Magistrate Judge Paul M. Warner** |

All parties in this case have consented to Chief Magistrate Judge Paul M. Warner conducting all proceedings, including entry of final judgment, with appeal to the United States Court of Appeals for the Tenth Circuit.[1]  *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73.  Before the court is Plaintiff Xat.com Limited's ("Xat") motion for determination of subject-matter jurisdiction.[2]  The court has carefully reviewed the written memoranda submitted by the parties. Pursuant to Civil Rule 7-1(f) of the Rules of Practice for the United States District Court for the District of Utah, the court has concluded that oral argument is not necessary and will decide the motion on the basis of the written memoranda.  *See* DUCivR 7-1(f).

---

[1] *See* docket no. 11.

[2] *See* docket no. 89.

**RELEVANT BACKGROUND**

In its motion, Xat requests that the court determine whether it has subject-matter jurisdiction over this matter. Xat asserts that when the complaint was filed, it was incorporated and had its principal place of business in the United Kingdom. Xat also argues that while, at the time the complaint was filed, Defendant Hosting Services, Inc. aka 100TB.com ("100TB") was incorporated in Delaware, its principal place of business was in the United Kingdom. In support of that argument, Xat points to evidence that, according to Xat, shows that when the complaint was filed, 100TB's president, John Morris ("Morris"), and vice president and treasurer, Adam Kilgour ("Kilgour"), were overseeing 100TB's operations from the United Kingdom.[3] Based upon that evidence, Xat contends that 100TB's principal place of business was in the United Kingdom when the complaint was filed. Consequently, Xat maintains, both it and 100TB are foreign parties for purposes of subject-matter jurisdiction and, therefore, the court lacks subject-matter jurisdiction.

100TB opposes Xat's motion. To rebut the evidence that Xat relies upon, 100TB relies upon the declaration of its vice president, Chris Matue ("Matue"), who resides in Utah and works in 100TB's Utah office. In that declaration, Matue asserts that he is "responsible for overseeing, directing and managing 100TB's business activities from 100TB's headquarters and principal office" in Utah and that "100TB's day-to-day operations and business activities were managed and directed by [him] and other senior 100TB employees in Utah."[4] Matue admits that Morris

---

[3] *See* docket no. 89 at 4-5; docket no. 101 at 10-12.

[4] Docket no. 96-2 at ¶¶ 1, 6.

and Kilgour reside in the United Kingdom, but asserts that, as of the date the complaint was filed, "neither of them was involved in overseeing 100TB's daily operations."[5] Matue asserts that the roles of Morris and Kilgour primarily involved "providing input on long-term planning and strategic guidance for 100TB."[6] Matue further asserts that Morris and Kilgour "fulfilled their roles from various locations, including 100TB's headquarters" in Utah; "Morris and Kilgour frequently travelled to Utah, typically on a quarterly basis," to participate in certain meetings; and Morris and Kilgour "regularly communicated with [Matue] and other 100TB personnel in Utah via phone, email, and Skype, sometimes from the United Kingdom and sometimes from other locations throughout the globe."[7] Based upon Matue's declaration, 100TB contends that its principal place of business is located in Utah and, consequently, that this court has subject-matter jurisdiction.

## LEGAL STANDARDS

"Subject-matter jurisdiction involves a court's authority to hear a given type of case and may not be waived." *Radil v. Sanborn W. Camps, Inc.*, 384 F.3d 1220, 1224 (10th Cir. 2004) (citations omitted). Subject-matter jurisdiction is to be determined based on the facts that existed at the time the complaint was filed. *See Grupo Dataflux v. Atlas Global Grp., L.P.*, 541 U.S. 567, 570-71 (2004); *Grynberg v. Kinder Morgan Energy Partners, L.P.*, 805 F.3d 901, 905 (10th Cir. 2015). "[B]ecause parties cannot waive subject-matter jurisdiction, they can challenge it 'at any

---

[5] *Id*. at ¶ 6.

[6] *Id*.

[7] *Id*.

time prior to final judgment.'" *City of Albuquerque v. Soto Enters., Inc.*, 864 F.3d 1089, 1093 (10th Cir. 2017) (quoting *Grupo Dataflux*, 541 U.S. at 571), *cert. denied sub nom. Soto Enters., Inc. v. City of Albuquerque, N.M.*, 138 S. Ct. 983 (2018). "Where a party attacks the factual basis for subject[-]matter jurisdiction, the court does not presume the truthfulness of factual allegations in the complaint, but may consider evidence to resolve disputed jurisdictional facts." *Radil*, 384 F.3d at 1224. "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

"To establish subject[-]matter jurisdiction under 28 U.S.C. § 1332, a party must show that complete diversity of citizenship exists between the parties and that the amount in controversy exceeds $75,000." *Radil*, 384 F.3d at 1225. Federal courts

> have diversity jurisdiction over cases between citizens of the United States and citizens of foreign states, but . . . do not have diversity jurisdiction over cases between aliens. More specifically, diversity is lacking . . . where the only parties are foreign entities, or where on one side there are citizens and aliens and on the opposite side there are only aliens.

*Bayerische Landesbank, N.Y. Branch v. Aladdin Capital Mgmt. LLC*, 692 F.3d 42, 49 (2d Cir. 2012) (quotations and citation omitted) (second alteration in original); *see also Nike, Inc. v. Comercial Iberica de Exclusivas Deportivas, S.A.*, 20 F.3d 987, 991 (9th Cir. 1994) ("Although the federal courts have jurisdiction over an action between 'citizens of a State and citizens or subjects of a foreign state,' 28 U.S.C. § 1332(a)(2), diversity jurisdiction does not encompass a foreign plaintiff suing foreign defendants . . . .").

For purposes of subject-matter jurisdiction, a corporation is a citizen of the place where it is incorporated and has its principal place of business. *See* 28 U.S.C. § 1332(c)(1). The United States Supreme Court has held

> that "principal place of business" is best read as referring to the
> place where a corporation's officers direct, control, and coordinate
> the corporation's activities. It is the place that Courts of Appeals
> have called the corporation's "nerve center." And in practice it
> should normally be the place where the corporation maintains its
> headquarters—provided that the headquarters is the actual center
> of direction, control, and coordination, *i.e.*, the "nerve center," and
> not simply an office where the corporation holds its board
> meetings (for example, attended by directors and officers who have
> traveled there for the occasion).

*Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010). "At its heart, the nerve center test is an inquiry to find the one location from which a corporation is ultimately controlled. Put slightly differently, the federal court is to look for the place where the buck stops. And where it does, well, that's the corporation's nerve center and principal place of business." *Harrison v. Granite Bay Care, Inc.*, 811 F.3d 36, 41 (1st Cir. 2016).

## **ANALYSIS**

After considering the evidence submitted by the parties and the relevant legal standards, the court concludes that, at the time the complaint was filed, 100TB's principal place of business was located in the United Kingdom and, therefore, that subject-matter jurisdiction is lacking in this matter. The court reaches those conclusions for the following reasons.

First, the court has determined that Morris and Kilgour, both of whom reside in the United Kingdom, exercised ultimate control over 100TB when the complaint was filed. That determination is supported by the evidence cited by Xat, as well as Matue's declaration, which indicates that Morris and Kilgour both reside in the United Kingdom and that their roles "primarily involved providing input on long-term planning and strategic guidance for 100TB."[8]

---

[8] *Id.*

Matue's declaration further demonstrates that Morris and Kilgour did not fulfill those roles primarily from 100TB's Utah office.[9] Instead, Matue's declaration indicates that Morris and Kilgour typically visited 100TB's Utah office only on a quarterly basis to participate in certain meetings.[10] Matue's declaration also indicates that Morris and Kilgour typically communicated with Matue and other 100TB personnel in Utah via phone, email, and Skype from the United Kingdom.[11] While Matue's declaration also states that those communications occurred from various other locations, the United Kingdom is the only specific location noted.[12]

Second, the court has determined that Matue's declaration does not demonstrate that he ultimately controlled 100TB from 100TB's Utah location, but instead that he controlled only 100TB's day-to-day operations in Utah. Mere control of a corporation's day-to-day operations from a particular location is insufficient under *Hertz* to demonstrate that said location is the corporation's principal place of business; instead, a corporation's principal place of business is the location from which the corporation is directed and controlled. *See, e.g.*, *Hertz Corp.*, 559 U.S. at 96 ("For example, if the bulk of a company's business activities visible to the public take place in New Jersey, while its top officers direct those activities just across the river in New York, the 'principal place of business' is New York."); *Harrison*, 811 F.3d at 41-42 (concluding that although a corporation's owners were "hands-off when it comes to day-to-day decisions"

---

[9] *See id.*

[10] *See id.*

[11] *See id.*

[12] *See id.*

6

that took place in one location, it was the location from which the owners exercised "'ultimate' control" that was the corporation's principal place of business); *Hoschar v. Appalachian Power Co.*, 739 F.3d 163, 172 (4th Cir. 2014) (concluding that an entity's principal place of business was the location from which the entity's officers made "significant corporate decisions and set corporate policy such that they direct, control, and coordinate [the entity's] activities," rather than the location where company officers were "responsible for implementing the large-scale directives" and "managing [the entity's] day-to-day operations"); *Cent. W. Va. Energy Co. v. Mountain State Carbon, LLC*, 636 F.3d 101, 104-106 (4th Cir. 2011) (concluding that the location of an entity's day-to-day operation was not relevant to the nerve-center test under *Hertz* and that, instead, the location from which an entity's officers were responsible for significant oversight, strategic decision-making, setting policy, and overseeing significant corporate decisions was the entity's primary place of business).

For those reasons, the court concludes that, at the time the complaint was filed, 100TB's principal place of business was in the United Kingdom. Therefore, because both Xat and 100TB were foreign entities for purposes of subject-matter jurisdiction when the complaint was filed, subject-matter jurisdiction is lacking, and the court must dismiss this action without prejudice.

As a final matter, the court acknowledges that it is peculiar that Xat, as the plaintiff in this matter, has raised the issue of subject-matter jurisdiction. Nevertheless, the issue of subject-matter jurisdiction may be raised by any party at any time prior to final judgment. *See City of Albuquerque*, 864 F.3d at 1093. Furthermore, the court has an independent obligation to ensure that subject-matter jurisdiction exists in any particular case. *See* Fed. R. Civ. P. 12(h)(3); *City of Albuquerque*, 864 F.3d at 1093 ("[D]istrict courts have an independent obligation to

address their own subject-matter jurisdiction and can dismiss actions *sua sponte* for a lack of subject-matter jurisdiction.").

## CONCLUSION AND ORDER

Based upon the foregoing, IT IS HEREBY ORDERED:

1. Xat's motion for determination of subject-matter jurisdiction[13] is GRANTED.

2. This action is DISMISSED WITHOUT PREJUDICE.

IT IS SO ORDERED.

DATED this 8th day of May, 2019.

BY THE COURT:

PAUL M. WARNER
Chief United States Magistrate Judge

---

[13] *See* docket no. 89.